IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


Deckers Outdoor Corporation,    )
                              )
    Plaintiff,          )
                              )
                              )
    v.                )        No. 25 C 15281
                              )
                              )
AKEANH6X696JN et al.,     )
                              )
    Defendants.        )


<u>Memorandum Opinion and Order</u>

Plaintiff Deckers is a shoe company that makes, most famously, the UGG line of footwear. Deckers has alleged that defendants, largely or entirely Chinese online retailers, are marketing knock-off versions of its Tasman slipper. Before me is defendant Comfystep's motion to dismiss pursuant to Federal Rule of Procedure 12(b)(6). For the reasons that follow, I deny that motion.

1

## I.

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289-290 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018).

## II.

Deckers Outdoor Corporation manufactures shoes under, *inter alia*, the UGG brand, best known for its suede boots. Deckers also

makes and sells the UGG Tasman, which resembles a platform-soled slipper version of the more-famous boot. Deckers has identified the sixty-four defendants listed in the complaint as the proprietors of e-commerce stores operated out of the People's Republic of China "or other foreign jurisdictions with lax intellectual property enforcement systems." ECF 1 at 5. Through storefronts on sites like Temu and Amazon, the defendants market slippers that, at least at first glance, resemble the UGG Tasman. *See generally* ECF 2-1 & 2-2; *see also* ECF 2-1 at 7-9 (Comfystep's slipper and store page).

Deckers has registered "Tasman" as a trademark, but defendants have avoided embossing or otherwise applying that mark to their shoes. As such, Deckers has alleged an infringement of the trade dress, or design, embodied by the Tasman slipper. Deckers has framed that infringement as violations of the Lanham Act, 15 U.S.C. § 1051 *et seq.* (Count I), and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 *et seq.* (Count II).

Most of the defendants Deckers named in this prototypical "Schedule A case" have failed to appear, resulting in, for them, an entry of default.[1] But Comfystep has moved to dismiss, arguing

---

[1] *See Eicher Motors Ltd. v. Partnerships and Unincorporated Associations Identified on Schedule A Hereto*, 794 F. Supp. 3d

under Federal Rule of Civil Procedure 12(b)(6) that Deckers has failed to make out the requirements for the protection of a trade dress.

**III.**

The Lanham Act protects registered trademarks, but it also provides producers of products a cause of action against any other person using "any word, term, name, symbol, or device, or any combination thereof...which...is likely to cause confusion...as to the origin, sponsorship, or approval of his or her goods." 15 U.S.C. § 1125(a). The text of Section 1125(a) has been held to include "trade dress," which originally referred to the packaging (the "dressing") of a product, but which now also refers to the product's design. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000). Because functional design and engineering are the province of patent, rather than trademark, law, the Lanham Act protects a product's design only to the extent that the design, aesthetically, identifies the product as having come from a particular producer. That is, if something about the Tasman tells a consumer: "That is an UGG slipper," then its design is protectable trade dress; if seeing a Tasman just leads a consumer

---

543, 545-47 (N.D. Ill. 2025) for a thorough (critical) description and discussion of these kinds of cases.

to say, "That is a slipper," then the Lanham Act affords Deckers no protection.

### A.

To state a claim for trade dress infringement, Deckers must sufficiently allege three elements: (1) that its trade dress is "nonfunctional;" (2) that it has acquired "secondary meaning;" and (3) that Comfystep's use of the trade dress is likely to cause confusion among consumers. *Trove Brands, LLC v. Cal. Innovations Inc.,* 2021 WL 5320408, at *2 (N.D. Ill. Nov. 16, 2021).

For the Tasman's trade dress to be "nonfunctional" means that, at base, the stylistic features of the shoe are not fundamental to suede or faux-suede slippers generally. *See Qualitex Co. v. Jacobson Prods. Co.,* 514 U.S. 159, 164–65 (1995). That is, an element of color or styling without which the shoe would still function, and which helps to identify the shoe as an UGG would be "nonfunctional," whereas the presence of a sole, or stitching, or any other element without which it would be difficult to make a shoe at all would be "functional." *Id.* at 165 ("In general terms, a product feature is functional and cannot serve as a trademark if it is essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage.") (citations omitted).

"Secondary meaning" describes a situation where, over time, the particular design of a product has come to identify that product, in the mind of the consumer, with its producer. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992) (citations omitted). An excellent example would be Deckers's own original UGG boot. On first release, a consumer who could not see the small UGG logo would not connect that particular design with any particular designer whereas now, decades later, a particular kind of moccasin-like all-suede, fleece-lined, rubber-soled women's boot brings UGG to mind. *See Qualitex*, 514 U.S. at 166 (noting that where customers associated a particular color scheme on dry-cleaning pads with Qualitex, that scheme had acquired secondary meaning as a trade dress).

And then at this stage, Deckers must plead facts pointing to at least the plausibility that Comfystep's marketing of a product resembling the Tasman is likely to cause confusion among consumers as to whose shoe is whose. The Seventh Circuit has set out seven factors to determine the likelihood of confusion: "(1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any evidence of actual confusion; and (7) the intent of the defendant to 'palm

off' his product as that of another." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015). "No single factor is dispositive, and courts may assign varying weights to each of the factors depending on the facts presented," but the Seventh Circuit has recognized that the marks' similarity and actual confusion "are especially important." *Id.*; *Packman v. Chicago Trib. Co.*, 267 F.3d 628, 643 (7th Cir. 2001).

**B.**

Comfystep argues in its motion to dismiss that Deckers has failed to plead nonfunctionality and secondary meaning. Comfystep also perfunctorily asserts that Deckers failed to plausibly allege likelihood of confusion, a contention it only developed in its reply in support of its motion. Deckers argues correctly that that is a combination which could result in waiver—*see United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991), and *Darif v. Holder*, 739 F.3d 329, 336–37 (7th Cir. 2014)—but whether Comfystep has waived or not is immaterial, given that Deckers has sufficiently pled the likelihood of confusion.

Comfystep's specific assertion as to nonfunctionality is that every feature of the Tasman slipper is merely functional: "suede offers durability; fur lining insulates; braid reinforces seams...These are dictated by utility, not ornamentation." ECF 31 at 4-5. Deckers rejoins that it has at least plausibly asserted

that some of the features of the Tasman's trade dress are nonfunctional and that deciding a factual issue like nonfunctionality at the pleading stage is inappropriate.

First, I agree with Deckers that a fact-intensive question like nonfunctionality is usually best addressed further down the line. *Toyo Tire & Rubber Co. v. Atturo Tire Corp*, 2015 WL 13913257 at *3 (N.D. Ill. Mar. 13, 2015). Second, while a true determination on the issue will depend on further factual development, on their face, certain elements of the Tasman do not seem to be the kind of thing so structurally essential to a slipper that protecting them would "put competitors at a significant non-reputation-related disadvantage." *Qualitex*, 514 U.S. at 165. For example, even a lay person understands that a slipper does not *need* as a matter of construction to have a raised seam running up the middle of the upper or to have a particular pattern of braid running around the upper's opening. Which means that those features, even if they might serve some function, are not, on their face, necessarily functional in the trade dress sense. *Id.*

As to secondary meaning, Comfystep asserts that Deckers's pleading is purely conclusory and faults Deckers for failing to append "consumer surveys, sales figures, advertising expenditures, or unsolicited media coverage." ECF 31 at 4. Deckers responds that it has sufficiently pled its product's relationship with the public

8

and that it need not prove that status with surveys or newspaper clippings or other evidence at this stage.

Again, resolution of the secondary meaning question, because it is fact-intensive, is best left for resolution after discovery. *Trove Brands*, 2021 WL 5320408 at *4. At the pleading stage, all Deckers needs to have plausibly made out is "that there is 'a link in the minds of consumers between the [product] and its source.'" *Weber-Stephen Products LLC v. Sears Holding Corp.*, 2013 WL 5782433, at *5 (N.D. Ill. Oct. 25, 2013) (quoting *Jay Franco & Sons, Inc. v. Franek*, 615 F.3d 855, 857 (7th Cir. 2010)). And while Comfystep is correct that Deckers could attach surveys and sales figures, it could also plead "length and manner of use, amount and manner of advertising, volume of sales, [and] place in the market." *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 291 (7th Cir. 1998). And that is what Deckers has pled:

> 20. The UGG® Tasman®...[has] been featured in many of Deckers' advertising and promotional materials as well as in various trade publications. The UGG® Tasman® has received a large volume of unsolicited media attention, for example, through various celebrities seen wearing the UGG® Tasman®, and has graced the pages of many popular magazines nationwide and internationally.
>
> 21. Deckers has spent substantial time, effort, and money in designing, developing, advertising, promoting, and marketing the UGG® brand and its line of footwear embodying the Tasman® trade dress. Deckers spends millions of dollars annually on advertising UGG® products, including [the Tasman].

ECF 1 at 7-8. These facts lead to the plausible inference that the average consumer, when they see a Tasman, probably thinks "UGG!"

Finally, without breaking the question down into the Seventh Circuit's seven-factor test, Deckers has attached photographs which on their own meet its burden to plead the plausibility of confusion. This is the Tasman:



ECF 1 at 7. And then this is the slipper produced by Comfystep that Deckers alleges infringes the Tasman's trade dress:

10



ECF 2-1 at 7. I find that consumers could plausibly confuse Comfystep's slipper with the Tasman.[2]

**IV.**

For the foregoing reasons, I deny Comfystep's motion to dismiss.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge
Dated: June 22, 2026

---

[2] I take judicial notice that Deckers also sells the Tasman with a black upper, black sole, and a black-and-white color scheme to the braid. Women's Tasman II, UGG.com (last visited May 28, 2026), https://www.ugg.com/women-slippers/tasman-ii/1174470.html?dwvar_1174470_color=BLK.

11